```
                    UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF IOWA
                            WESTERN DIVISION


IN RE:

ROBERT A. LUDWIG                                    Chapter 13
KATHLEEN A. LUDWIG

      Debtors.                           Bankruptcy No. 07-01855S


                       MEMORANDUM DECISION:
                       MOTION TO MODIFY PLAN
```

Debtors Robert and Kathleen Ludwig move to modify their plan to suspend payments. The trustee objects. Hearing was held on November 12, 2008 in Sioux City. Wil L. Forker appeared for the Ludwigs. Carol F. Dunbar, chapter 13 trustee, appeared on her own behalf. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

Ludwigs filed their chapter 13 petition on October 10, 2007. They filed their plan on the same date; it was confirmed on December 3, 2007 (docs. 21 and 22).

The plan provided for payments to the trustee of $1,249.60 per month for 60 months. If fully performed, it would provide payment in full of all unsecured claims. The claims deadline has passed; allowed unsecured claims total $48,050.25.

From the plan payments, the trustee was to cure a $4,201.00 arrearage on Ludwigs' home mortgage; pay Ludwigs' attorney's fees in the amount of $1,750.00; and pay trustee's fees.

After confirmation, Kathleen changed jobs. Beginning in

December 2007 she began working for the Kingsley [Iowa] News Times, as its only employee. She was responsible for all aspects of publication. She said she received no training. She did not enjoy the position, and quit after four months. Thereafter she worked for a temporary-labor supplier. That position ended in August 2008.

Robert works for Tyson Fresh Meats in Dakota City, Nebraska. When the bankruptcy petition was filed, he had an annual gross salary of $75,000.00. As a salaried employee, he works long hours, but receives no overtime pay. At the time of filing, schedule I showed that he had monthly take-home pay of $3,577.88 (doc. 1). This was contradicted by his testimony at the hearing that his take-home pay at filing was $2,307.22. After confirmation, he said he went from withholding status of zero exemptions to exempt status, thereby increasing his take-home pay to the equivalent of $3,035.50 per month, but he owed income taxes.

Robert later returned to zero exemptions, and thus, at the time of the hearing, his take-home pay was again $2,307.22 per month.

In summary, at the time of filing, Robert's take-home pay was scheduled at $3,577.88, and Kathleen's was scheduled at $1,613.84 for a total of $5,191.72 per month (doc. 1, schedules I and J). Robert's take-home pay is now $2,307.22, and Kathleen's

2

is zero.

Their current expenses at the time of filing were $3,582.50 (doc. 1, schedule J). Kathleen testified that since she has been unemployed, they have been able to reduce or eliminate expenses for transportation, recreation, day care, and parking. Since filing, the cost of school lunches has increased. Based on Kathleen's testimony, I estimate the reduction in monthly expenses has been approximately $400.00.

Certainly since the termination of Kathleen's temp services job, the Ludwigs' monthly take-home pay is less than their current expenses. The monthly deficit is about $875.00. Kathleen testified that they are barely able to make their mortgage payment, and they have been falling behind on paying post-petition medical bills. She said they have been borrowing from her mother in an effort to make ends meet.

Since filing, Ludwigs have paid the trustee a total of $15,870.82 in plan payments. From that amount, Ludwigs' attorney has been paid in full for his work through plan confirmation, and the arrearage on the home mortgage has been cured. Only payments on unsecured debt and trustee fees remain. Under chapter 7, the court finds and concludes that unsecured creditors would have been paid less than $150.00 (see doc. 1 at 17-22, schedules A-C).

Ludwigs' proposed plan modification is that they suspend payments to the trustee so long as Kathleen is unemployed (doc.

3

40).  Upon her obtaining employment, Ludwigs would file another motion to modify in consideration of her then income.

The trustee objects, contending that the modification is too vague and that the number of months of suspension should be designated.

Suspension of plan payments is not uncommon when a debtor's income is reduced because of job loss.  When the period of suspension is short and predictable, often creditors are not significantly affected, especially where a modification proposes to make up suspended payments through an extension of the plan period.  See generally 3 Keith M. Lundin, Chapter 13 Bankruptcy, § 258.1 (3d ed. 2007).  However, in Ludwigs' case, the reduction of income is substantial, and there is no predictability as to when the income would be restored or to what extent.

Pursuant to 11 U.S.C. § 1329(b)(1), Ludwigs must meet the general requirements of plan confirmation.  This includes feasibility, or the ability of the debtors to make all payments under the plan and to comply with the plan.  11 U.S.C. § 1325(a)(6).  Ludwigs are presently earning less than their expenses.  They currently show no ability to make plan payments.  They seek court approval of a modification that permits suspension of plan payments for the indefinite future, with no predictability of when Kathleen will obtain a job, or the likelihood of her obtaining employment which would permit her to

4

take home in excess of $875.00 per month, the approximate amount of Ludwigs' current monthly deficit.

Ludwigs have made plan payments for 12 months; 48 months remain. But the proposed modification would provide suspended payments for the remaining 48 months if Kathleen cannot obtain employment which permits her to take home sufficient income to pay all current expenses and to make a plan payment. The length of the suspension is speculative; therefore, I conclude the proposed modification is not feasible. See In re Miller, 2008 WL 2323901 at *1 (Bankr. N.D. Iowa June 5, 2008) (denying request to suspend payments eight months).

Moreover, their current circumstances may impact Ludwigs' continuing eligibility to continue in chapter 13. Only an "individual with regular income" may be a debtor under chapter 13. 11 U.S.C. § 109(e).

> The term 'individual with regular income,' means individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title....

11 U.S.C. § 101(30). Ludwigs presently have no excess income from which to make plan payments. Had this been the circumstance at the outset of the case, they would not have been eligible for chapter 13. Tenney v. Terry (In re Terry), 630 F.2d 634, 635 (8th Cir. 1980).

The motion to modify will be denied. The Ludwigs appear to be acting in good faith. If requested by the debtors' further

5

motion to modify, I would approve a six-month suspension to permit Kathleen an opportunity to obtain employment and to permit Ludwigs further opportunity to reduce expenses.  At the expiration of six months, debtors would be required to file a further plan modification which would resume plan payments at the then-appropriate amount.

    IT IS ORDERED that judgment shall enter that Ludwigs' proposed plan modification is denied.  If debtors immediately seek a modification limited to a six-month suspension, the court would approve such modification without further notice or hearing.  The modification must be served on the trustee and the U.S. trustee.

    DATED AND ENTERED  November 20, 2008

*/s/ W.L. Edmonds*

William L. Edmonds, Bankruptcy Judge